774 A.2d 495

NINA HUBBARD, AS GUARDIAN AD LITEM OF NIA HUBBARD, HER MINOR CHILD, PLAINTIFF–APPELLANT, v. DR. JOSEPH REED, D.D.S., DEFENDANT–RESPONDENT, AND DR. ROBERT KARDON, D.D.S., DEFENDANT.

Argued January 29, 2001—Decided June 21, 2001.

388

*Edward J. Crisonino* argued the cause for appellant.

*Timothy P. Mullin* argued the cause for respondent (*Mintzer, Sarowitz, Zeris & Ledva,* attorneys; *Mr. Mullin* and *Kimberly A. Jubanyik,* on the briefs).

*William L. Gold* submitted a brief on behalf of amicus curiae, Association of Trial Lawyers—New Jersey (*Bendit Weinstock,* attorneys; *Mr. Gold* and *Abbott S. Brown,* on the brief).

The opinion of the Court was delivered by

PORITZ, C.J.

This case and *Palanque v. Lambert–Woolley,* 168 *N.J.* 387, 774 *A.*2d 501 (2001), also decided today, are the seventh and eighth malpractice actions to require intervention by this Court for a determination of the meaning and applicability of the Affidavit of Merit Statute enacted six years ago. Plaintiffs have raised numerous issues in a variety of factual settings that implicate both the language of the statute and the Legislature's intent. In our opinions we have focused on the legislative goals, and on the words and phrases used by the Legislature to carry out those goals. Where we have found ambiguity, we have looked to the legislative purpose underlying the statute, but we have also sought to elimi-

nate any remaining confusion and to provide guidance for the future.

At issue in this case is whether a plaintiff in a common knowledge malpractice action must comply with the affidavit requirement of the statute. Under the statute, a plaintiff who brings a malpractice action against a licensed professional must provide the defendant with the affidavit of an appropriate expert stating that the action has merit. *N.J.S.A.* 2A:53A–27. Because we do not believe that the Legislature intended to burden a plaintiff with the affidavit requirement when expert testimony is not required at trial to establish the defendant's negligence, we hold that an affidavit need not be provided in common knowledge cases when an expert will not be called to testify "that the care, skill or knowledge ... [of the defendant] fell outside acceptable professional or occupational standards or treatment practices." *N.J.S.A.* 2A:53A–27.

I

On August 9, 1996, an orthodontist referred sixteen-year-old plaintiff Nia Hubbard to defendant Robert Kardon, D.D.S., with instructions to extract her mandibular left lateral incisor. Dr. Kardon, in turn, referred plaintiff to his associate, Joseph Reed, D.D.S, who extracted her mandibular left second bicuspid instead. Plaintiff and her mother as guardian *ad litem* filed a complaint for dental malpractice on July 6, 1998 against Drs. Reed and Kardon. In his answer to the complaint, Dr. Kardon denied any negligence and requested that plaintiffs provide him with an affidavit of merit pursuant to *N.J.S.A.* 2A:53A–27. Dr. Reed also filed an answer denying negligence and cross-claiming against Dr. Kardon.

Plaintiffs did not file the affidavit within the sixty-day time period prescribed by *N.J.S.A.* 2A:53A–27. On April 20, 1999, Dr. Kardon filed a motion to dismiss based on that failure and six days later Dr. Reed filed a similar motion. Plaintiffs responded on May 5, 1999, asserting that they were not obligated to provide an affidavit of merit because they intended to rely at trial upon the

common knowledge doctrine and *res ipsa loquitur.*[1] Finding that plaintiffs are required to comply with the Affidavit of Merit Statute even in common knowledge cases, the trial court granted defendants' motions.

Plaintiffs appealed and the Appellate Division affirmed. *Hubbard v. Reed,* 331 *N.J.Super.* 283, 751 *A.*2d 1055 (2000). We granted certification on September 8, 2000, 165 *N.J.* 527, 760 *A.*2d 781, and now reverse.

## II

■ *N.J.S.A.* 2A:53A–27 states:

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

Defendants argue that the clear and unambiguous language of *N.J.S.A.* 2A:53A–27 requires that an affidavit of merit be filed in all malpractice cases. Defendants contend that only after a plaintiff has made a threshold showing of merit by way of an

---

[1] Because we hold today that a plaintiff in a common knowledge case is not required to file an affidavit of merit, we find it unnecessary to resolve whether a separate exception exists in respect of the *res ipsa loquitur* doctrine. We note, however, that in a *res ipsa loquitur* action, the jury is allowed to infer a defendant's negligence " 'where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.' " *Buckelew v. Grossbard,* 87 *N.J.* 512, 525, 435 *A.*2d 1150 (1981) (quoting *Bornstein v. Metropolitan Bottling Co.,* 26 *N.J.* 263, 269, 139 *A.*2d 404 (1958)). It may be necessary for a plaintiff in such actions to present "expert testimony to the effect that the medical community recognizes that an event does not ordinarily occur in the absence of negligence," *id.* at 527, 435 *A.*2d 1150, in order to meet the first prong of the *res ipsa loquitur* test. An affidavit of merit would be required in those cases.

expert affidavit can he or she then select a theory of liability under which to seek damages. Without that affidavit, according to defendants, attorneys would be attesting to the merits of their clients' claims.

Plaintiffs respond that when a defendant's negligence is so apparent that expert testimony will not be needed at trial, the purpose of the statute—to reduce frivolous lawsuits—would not be furthered by requiring an affidavit of merit. Plaintiffs further assert that the cost of obtaining an affidavit in a common knowledge case involving minor injuries would make bringing an action for recovery, no matter how meritorious, too expensive.

## III

Because this case requires us to engage in statutory construction, our "overriding goal must be to determine the Legislature's intent." *State, Dep't of Law & Pub. Safety v. Gonzalez,* 142 *N.J.* 618, 627, 667 *A.2d* 684 (1995) (citing *Young v. Schering Corp.,* 141 *N.J.* 16, 25, 660 *A.2d* 1153 (1995)). The first step in determining the Legislature's intent is to look at the plain language of the statute. *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.2d* 399 (1982); *see also Merin v. Maglaki,* 126 *N.J.* 430, 434–35, 599 *A.2d* 1256 (1992) (holding that statute's "language should be given its ordinary meaning, absent a legislative intent to the contrary"). As a general rule, when the language of a statute is clear on its face, " 'the sole function of the courts is to enforce it according to its terms.' " *Sheeran v. Nationwide Mut. Ins. Co.,* 80 *N.J.* 548, 556, 404 *A.2d* 625 (1979) (quoting *Caminetti v. United States,* 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L.Ed.* 442, 452 (1917)). Nevertheless, we also have stressed that "where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." *Turner v. First Union Nat. Bank,* 162 *N.J.* 75, 84, 740 *A.2d* 1081 (1999) (citing *Watt v. Mayor of Franklin,* 21 *N.J.* 274, 278, 121 *A.2d* 499 (1956)). Thus, when a " 'literal interpretation of individual statutory terms or provisions' " would lead to results " 'inconsistent with the

overall purpose of the statute,'" that interpretation should be rejected. *Cornblatt v. Barow*, 153 *N.J.* 218, 242, 708 *A.*2d 401 (1998) (quoting *Young, supra,* 141 *N.J.* at 25, 660 *A.*2d 1153).

### A

The Affidavit of Merit Statute, on its face, applies to "any action" involving professional malpractice. *N.J.S.A.* 2A:53A–27. No express exception is made for common knowledge cases, nor does the legislative history specifically address the question. Even so, plaintiffs argue that it makes no sense to burden them in common knowledge cases with the affidavit of merit requirement. In support, they point to the concurrence in *Levinson v. D'Alfonso & Stein,* 320 *N.J.Super.* 312, 727 *A.*2d 87 (App.Div.1999), and to *Janelli v. Keeper,* 317 *N.J.Super.* 309, 721 *A.*2d 1036 (Law Div. 1998).

In *Janelli, supra,* the plaintiff alleged that "the defendant [chiropractor] used excessive force which resulted in two left-sided ribs being fractured during a chiropractic manipulation." *Id.* at 310, 721 *A.*2d 1036. After the plaintiff failed to provide an affidavit of merit, the defendant moved to dismiss. The trial court determined that an affidavit of merit need not be provided when a plaintiff does not intend to rely upon experts at trial, and denied the defendant's motion. *Id.* at 311, 721 *A.*2d 1036. The court explained: "It would seem redundant and unnecessary to require a plaintiff to spend the funds necessary to hire such an expert when he or she never intends to utilize that expert at the time of trial." *Id.* at 313, 721 *A.*2d 1036.

In *Levinson, supra,* the plaintiff claimed that the defendant law firm settled his case without authorization. 320 *N.J.Super.* at 316, 727 *A.*2d 87. The Appellate Division held that the Affidavit of Merit Statute did not apply because the plaintiff had presented a "classic contract claim ... asserting damages alleged to arise because [defendants] breached [plaintiff's] written contract of employment." *Id.* at 317, 727 *A.*2d 87. Judge Wecker, concurring, also found that an affidavit was not required, but for the

reason that "the affidavit-of-merit statute cannot apply to those professional negligence claims that can proceed without expert testimony." *Id.* at 321, 727 *A.*2d 87 (citing *Janelli, supra,* 317 *N.J.Super.* at 313, 721 *A.*2d 1036). In Judge Wecker's view, when an expert is not needed "to withstand a summary judgment motion, or a motion to dismiss at trial under *R.* 4:37–2(b) or *R.* 4:40–1, it would be unreasonable to require an affidavit of merit as a condition of proceeding with the malpractice action." *Id.* at 321, 721 *A.*2d 1036.

 We agree. The primary purpose of the Affidavit of Merit Statute "is 'to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily [can] be identified at an early stage of litigation.'" *Cornblatt, supra,* 153 *N.J.* at 242, 708 *A.*2d 401 (quoting *In re Petition of Hall,* 147 *N.J.* 379, 391, 688 *A.*2d 81 (1997)). As observed by the Appellate Division, "the affidavit of merit statute 'is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint,' but with whether there is some objective threshold merit to the allegations." *Hubbard, supra,* 331 *N.J.Super.* at 292–93, 751 *A.*2d 1055 (quoting *Printing Mart–Morristown v. Sharp Elec. Corp.,* 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989)). To demonstrate that objective threshold of merit, the statute requires plaintiffs to provide an expert opinion, given under oath, that a duty of care existed and that the defendant breached that duty. Yet, by definition, in common knowledge cases an expert is not needed to demonstrate that a defendant breached a duty of care. The doctrine applies where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts." *Estate of Chin v. Saint Barnabas Med. Ctr.,* 160 *N.J.* 454, 469, 734 *A.*2d 778 (1999). Thus, a plaintiff in a common knowledge malpractice case will not need expert testimony at trial to establish the standard of care or a deviation therefrom. The question, then, is whether an expert is nonethe-

less required to establish that plaintiff's claims meet the required threshold.

We consider first the purpose of the statute, to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court. If jurors, using ordinary understanding and experience and without the assistance of an expert, can determine whether a defendant has been negligent, the threshold of merit should be readily apparent from a reading of the plaintiff's complaint. Although the Appellate Division points out that questions relating to evidence at trial and to the basis for the affidavit are quite different, *Hubbard, supra,* 331 *N.J.Super.* at 293, 751 *A.*2d 1055, broadly speaking, an affidavit serves little purpose when a plaintiff intends to rely on common knowledge at trial. Put another way, in a common knowledge case an expert is no more qualified to attest to the merit of a plaintiff's claim than a non-expert.

In so concluding, we are mindful that other states have enacted affidavit of merit statutes that specifically exempt common knowledge cases from the affidavit requirement. *See, e.g., Colo.Rev. Stat.* § 13–20–601 (1997) (stating that certificate of review is required in malpractice actions where "expert testimony would be necessary to establish a prima facie case"); *Minn.Stat. Ann.* § 145.682(2) (West 2000) (stating that affidavit is required in any "cause of action as to which expert testimony is necessary to establish a prima facie case"); *N.D. Cent.Code* § 28–01–46 (1999) (stating that affidavit requirement "does not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence"). *Cf. N.Y.C.P.L.R.* 3012–a(c) (McKinney 1991) (stating that no affidavit is required "[w]here the attorney intends to rely solely on the doctrine of 'res ipsa loquitur' "). Had our Legislature spoken on this issue directly, this case and its companion, *Palanque v. Lambert–Woolley,* would likely not have come before us. We do

not know whether the drafters of this legislation even contemplated a common knowledge exemption,[2] but believe such an exemption to comport with their likely intent, and with a practical common sense interpretation of the statute. *Township of Pennsauken v. Schad,* 160 *N.J.* 156, 170, 733 *A.*2d 1159 (1999) (stating that "where a statute or ordinance does not expressly address a specific situation, the court will interpret it 'consonant with the probable intent of the draftsman had he anticipated the matter at hand' ") (citation and internal quotation omitted); *cf. Amerada Hess Co. v. Director, Div. of Taxation,* 107 *N.J.* 307, 322, 526 *A.*2d 1029 (1987) ("We find the doctrine of probable legislative intent a more reliable guide than the so-called doctrine of legislative inaction."), *aff'd,* 490 *U.S.* 66, 109 *S.Ct.* 1617, 104 *L.Ed.*2d 58 (1989). Having considered both the purpose of the statute and its silence on this issue, we have determined that an affidavit of merit is not required in common knowledge cases.

**B**

■ Plaintiffs allege that Dr. Reed pulled the wrong tooth. It has long been settled that pulling the wrong tooth is negligent as a matter of common knowledge. *Steinke v. Bell,* 32 *N.J.Super.* 67, 70, 107 *A.*2d 825 (App.Div.1954) (holding that expert evidence is not required in malpractice case where dentist extracted wrong tooth). Thus, the average layperson could apply his or her general understanding and knowledge to find that the defendant in this case, Dr. Reed, breached a duty of care by pulling Nia Hubbard's mandibular left second bicuspid instead of her mandibular left lateral incisor. Plaintiffs will not present expert testimony to establish Dr. Reed's negligence at trial and, therefore,

---

2 The statute contains one exception to the affidavit requirement when the defendant does not provide records requested by a plaintiff that "hav[e] a substantial bearing on the preparation of the affidavit." *N.J.S.A.* 2A:53A–28. This exception relates to information necessary for the expert's evaluation of plaintiff's case and is unrelated in substance or kind to a common knowledge exception.

are not required to obtain an expert's affidavit prior to trial to demonstrate that their claim has threshold merit.

## C

Although we hold today that there is a common knowledge exception to the Affidavit of Merit Statute, we construe that exception narrowly in order to avoid non-compliance with the statute. Indeed, the wise course of action in all malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial. In most such cases, expert testimony will be required to establish both a standard of care and breach of that standard by the defendant, and a plaintiff who fails to present testimony could be subject to involuntary dismissal pursuant to *Rule* 4:37–2(b). Although we understand that in some cases plaintiffs may choose not to expend monies on an expert who will not testify at trial, there is some uncertainty in relying on common knowledge in professional malpractice cases. As the court below explained: "A timely filed affidavit would prevent the risk of a later dismissal." *Hubbard, supra,* 331 *N.J.Super.* at 294, 751 *A.*2d 1055; *see also Janelli, supra,* 317 *N.J.Super.* at 312, 721 *A.*2d 1036 (holding that "plaintiff[s] who [do] not file an affidavit of merit and [are] not successful in persuading a court that an expert is not necessary run[ ] the risk of having their case[s] dismissed for failure to state a cause of action under *N.J.S.A.* 2A:53A–29").

## IV

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ, Justices STEIN, COLEMAN, LONG, LAVECCHIA, ZAZZALI—6.

*Opposed*—None.