KUSKIN, J.T.C.
Plaintiff, RCN of New Jersey, Inc. (“RCN”), a provider of cable television service, seeks refunds of New Jersey sales tax paid by it for the period January 1, 1997 through December 31, 2000 with respect to purchases of machinery, apparatus, and equipment used to transmit television information. The items purchased included, among many others, cable wiring consisting of fiber-optic cable, coaxial cable, and coaxial drop cable (collectively “cable”). RCN contends that the purchases were exempt from tax under N.J.S.A. 54:32B-8.13(e) (“Section 8.13(e)”), a provision of the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -43. Section 8.13(e) provides as follows:
Receipts from the following are exempt from the tax imposed under the Sales and Use Tax Act:
e. Sales of machinery, apparatus or equipment» including- transponders, earth stations, microwave dishes, transmitters and receivers which have a useful life exceeding one year, other than that used in the construction or operation of towers, to a commercial broadcaster operating under a broadcasting license issued by the Federal Communications Commission or to a provider of cable/satellite television program services who may or may not operate under a broadcasting license issued by the Federal Communications Commission for use or consumption directly and primarily in the production or transmission of radio or television information transmitted, delivered or archived through any medium or method.
*24 Defendant, Director of the New Jersey Division of Taxation (the “Director”), denied the refunds. In his Final Determination letter, the Director based the denial on his conclusion that RCN was not a “provider of cable/satellite television program services” within the meaning of the statute. He initially asserted that position in these appeals, but has changed his position and now acknowledges that RCN satisfies this statutory criterion.[2] Based on the Director’s change of position, the parties have entered into a consent order that provides in relevant part as follows: “During the period between 1997 and 2000, Plaintiff RCN was a cable television provider within the meaning of N.J.S.A. 54:32B-8.13(e).”
The Director continues to oppose RCN’s exemption claim on the basis that cable and certain other items purchased by RCN are not exempt “machinery, apparatus or equipment” under Section 8.13(e) and has moved for partial summary judgment seeking a determination that purchases of cable do not qualify for exemption. This opinion addresses only the Director’s motion. For the reasons discussed below, I hold that purchases of cable qualify for exemption. Consequently, I deny the Director’s motion and enter partial summary judgment in favor of RCN even though RCN did not file a cross-motion for summary judgment on this issue.
Section 8.13(e) as quoted above contains amendments enacted in 1996. L. 1996, c. 26. The amendatory legislation, as originally introduced, Assembly Bill 1415 dated January 29,1996 (“A. 1415”), was entitled “An Act creating the ‘Business Employment Incentive Program’; amending and supplementing P.L. 1974, c. 80 and maldng an appropriation therefor.” The legislation created a government program providing monetary incentives to businesses that generated new employment in New Jersey.
As a result of amendments by the Senate Budget and Appropriations Committee, the title of the legislation changed to “An Act creating business employment incentives through a grant agree *25 ment program and an exemption under the sales and use tax for certain sales of machinery, apparatus and equipment used in the production or transmission of radio or television information, amending and supplementing P.L. 1974, c. 80, amending P.L. 1980, c. 105, and making an appropriation therefor.” A. 1415, Second Reprint. As the new title reflects, this version of A. 1415 coupled the incentive program with amendments expanding the exemption from sales and use tax previously contained in N.J.S.A. 54:32B-8.13(e). The amendments consisted of the following:
(a) the addition of the phrase “including transponders, earth stations, microwave dishes, transmitters and receivers which have a useful life exceeding one year” after the phrase “machinery, apparatus or equipment”;
(b) the addition of the phrase “or to a provider of cable/satellite television program services who may or may not operate under a broadcasting license issued by the Federal Communications Commission” after the reference to a broadcaster operating under an FCC license; and
(c) the deletion of the word “broadcasts” after the phrase “for use or consumption directly and primarily in the production or transmission of radio or television” and substitution of “information transmitted, delivered or archived through any medium or method.”
The Statement to A. 1415, First Reprint, by the Senate Budget and Appropriations Committee described the Committee’s amendment as providing “a sales and use tax exemption for certain property purchased by a provider of cable/satellite television program services, whether the provider is licensed by the Federal Communications Commission or not.” The Statement set forth the following explanation of the need for the exemption:
According to the sponsor of the companion Senate bill who proposed the amendment, the proliferation of cable/satellite program services, news, sports, or entertainment programming, together with advances in technology and the availability of personal computers, have led to the expansion, development and creation of various sources of production, distribution and transmission of information. All of these media share a common goal among themselves and with commercial radio and television broadcasting and newspapers and all compete for advertising and subscriber revenue and market share. This exemption would remove the disparate treatment among similar forms of the media industry and enhance the Stale’s ability to attract these emerging and expanding hi-tech segments of the media industry and provide additional jobs to the state.
[Senate Budget and Appropriations Committee Statement to A. 1415, First Reprint, March 18,1996.]
The foregoing legislative history provides limited guidance as to the proper interpretation of Section 8.13(e), as amended, with *26 respect to the issue of whether cable qualifies for the statutory exemption. The Director’s regulations offer no meaningful interpretive assistance. See N.J.A.C. 18:24-4.2 (defining “machinery, apparatus, or equipment” as used in N.J.S.A. 54:32B-8.13(a)) and N.J.A.C. 18:24-5.2 (defining “construction equipment” as used in N.J.S.A. 54:32B-8.13(d)). Under circumstances where the statutory language is not clear on its face and legislative history does not provide a definitive indication of legislative intent, a court may turn to canons of statutory interpretation, recognizing that this resource has its own limitations.
There are canons, both in Latin and in English, which will support almost any approach to interpretation which a court wishes to adopt. See generally Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About Hoto Statutes Are To Be Construed, 3 Vand L.Rev. 395 (1950) (cataloging twenty-eight canons of statutory interpretation and their respective direct opposites). There is, however, agreement in the more recent New Jersey cases that the following very general principles should be applied:
a) the court should attempt to determine the legislative intent in enacting particular legislation,
b) legislation should be interpreted in the context of related statutes, and
c) the “plain meaning” of a statute does not foreclose further analysis in light of the legislative purpose, the context of the statute, and the history of the statute.
[Morris-Sussex Area Co., Boy Scouts v. Hopatcong Bor., 15 N.J.Tax 438, 443 (Tax 1996) (citations omitted).]
To the three general principles in the foregoing quotation, I add the general principle that statutes should be interpreted sensibly in order to effectuate the legislative objective. See Hubbard v. Reed, 168 N.J. 387, 392-93, 774 A.2d 495 (2001) (stating that a literal interpretation of statutory provisions should be rejected if it would lead to results inconsistent with the purpose of the statute); Strube v. Travelers Indem. Co., 277 N.J.Super. 236, 240, 649 A.2d 624 (App.Div.1994), affd o.b., 142 N.J. 570, 667 A.2d 188 (1995) (adopting “the only sensible interpretation” of a statute).
The Director acknowledges that the reference to specific types of machinery, apparatus, and equipment in Section 8.13(e) is non-exhaustive, but argues that, in the absence of an express reference to “cable,” the statute should not be interpreted to include cable as an exempt item. In support of his position, the Director (1) invokes well-established law that exemptions are to be construed narrowly, see e.g. Metpath, Inc. v. Director, Div. of Taxation, 96 *27 N.J. 147, 152, 474 A.2d 1065 (1984), (2) notes the omission of “cable” from the 1996 amendments to the statute (see discussion of L. 1996, c. 26 above) and from an amendment enacted in 1997, L. 1997, c. 162, § 23, and (3) cites the express reference to “cable” in paragraph (c) of N.J.S.A. 54:32B-8.13, which exempts from sales and use tax “[s]ales of telephones, telephone lines, cables, central office equipment or station apparatus, or other machinery, equipment or apparatus, or comparable telegraph equipment to a service provider....” The Director contrasts the inclusion of the word “cable” in paragraph (c) with its omission from paragraph (e) of the statute.
The Director’s argument ignores the provisions of paragraph (b) of N.J.S.A. 54:32B-8.13. This paragraph exempts from sales and use tax “[s]ales of machinery, apparatus or equipment for use or consumption directly and primarily in the production, generation, transmission or distribution of gas, electricity, refrigeration, steam or water for sale or in the operation of sewerage systems.” Electric wire would qualify for exemption under this paragraph even though not specifically named in the paragraph. Wire is integral and essential to, and used directly and primarily in, the transmission of electricity and, therefore, would be a type of machinery, apparatus, or equipment to which the exemption applies.
Similarly, cable is integral and essential to, and used directly and primarily in, the transmission of television information by cable service providers such as RCN. Cable is the means by which the television information travels from the provider to its subscriber base. The cable runs on utility poles as does electric wire, and cable connections extend from the poles to homes and buildings just as electric wires are connected from the poles to homes and buildings. Cable, therefore, is used “directly and primarily in the ... transmission of ... television information transmitted ... through any medium or method” under Section 8.13(e).
The legislative history discussed above supports the foregoing interpretation of Section 8.13(e). The above quoted portion of the Senate Budget and Appropriations Committee Statement to A. *28 1415 reflects a legislative intent to give equal treatment to “similar forms of the media.” Section 8.13(e) applies not only to cable television service providers, but also to satellite television service providers. The 1996 amendatory language to Section 8.13(e) specifically exempted from sales tax microwave dishes, transmitters and receivers having a useful life in excess of one year. Exempting a microwave dish used by a satellite television provider to transmit television information to a subscriber but not exempting cable used by a cable television provider to transmit the same information would be inconsistent with the legislative intent of equal treatment as expressed in the Senate Budget and Appropriations Committee Statement.
The legislative history does not disclose why “transponders, earth stations, microwave dishes, transmitters and receivers” were selected for express inclusion in Section 8.13(e). I conclude that the Legislature sought to clarify that these items qualify for exemption as long as they are not “used in the construction or operation of towers” (this use being expressly excluded from the exemption). N.J.S.A. 54:32B-8.13(e). Cf. Emmis Broad. Corp. of N.Y. v. E. Rutherford Bor., 14 N.J.Tax 524, 529-30 (Tax 1995) (describing the operation of radio transmission towers), aff'd, 16 N.J.Tax 29 (App.Div.), certif. denied, 147 N.J. 263, 686 A.2d 764 (1996).
Based on the preceding discussion, I conclude that the exemption from sales and use tax set forth in N.J.S.A. 54:32B-8.13(e) is applicable to purchases by a provider of cable television program services of cable which has “a useful life exceeding one year” and is used “directly and primarily in the production or transmission of radio or television information transmitted, delivered or archived through any medium or method.” I further conclude that cable purchased by RCN satisfies the statutory criteria. Consequently, I deny the Director’s motion for partial summary judgment and enter partial summary judgment in favor of RCN (the non-moving party) on this issue. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 537, 666 A.2d 146 (1995) (stating: “If a case involves no material factual disputes, the court disposes of it as a matter of law by rendering judgment *29 in favor of the moving or non-moving party. ...”) (emphasis added).
In the event that the parties are unable, within a reasonable time period, to resolve all issues remaining as to whether the items other than cable purchased by RCN qualify for exemption under Section 8.13(e), a trial will be scheduled to determine which, if any, items still in dispute satisfy the statutory requirements for exemption.

 RCN moved for summary judgment as to this issue, but the Director's change of position rendered the motion moot. With the consent of the parties, RCN’s motion for counsel fees and costs in connection with its summary judgment motion has been adjourned.