DLD-234                                                                **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3384
_____

NORMAN L. SCOTT,
                                        Appellant

v.

BRIAN L. CALPIN, Esquire
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-08-cv-04810)
District Judge:  Honorable Renée Marie Bumb

_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 9, 2013
Before:  AMBRO, SMITH and CHAGARES, Circuit Judges

(Opinion filed: June 10, 2013)
_____

OPINION
_____

PER CURIAM

        In this legal malpractice action, Norman L. Scott appeals pro se from an order of the

United States District Court for the District of New Jersey granting summary judgment in favor

of Brian L. Calpin, the attorney who represented Scott in divorce proceedings.  For the reasons

that follow, we will summarily affirm the District Court's judgment.

Because we write primarily for the parties, we need only briefly review the underlying facts, which were aptly set forth in the District Court's Opinion. In 2006, Scott filed a divorce action in the Superior Court of New Jersey. Among other issues, the parties disputed whether a house that they shared was subject to equitable distribution. Shortly after Scott hired Calpin, the parties reached a settlement. Under its terms, Scott was to receive $8500 from the sale of the home, a sum that was apparently based on the premise that the house was not subject to equitable distribution. The settlement was entered on the record by the state court.

Approximately one year later, Scott filed a complaint in District Court, alleging that, as a result of Calpin's deficient representation, he did not receive an equitable share in the proceeds from the sale of the house. As relief, Scott demanded $250,000. In support of his claim, Scott submitted an affidavit of Bruce P. Friedman, a family law attorney admitted to practice in Pennsylvania. Friedman stated that he had "reviewed extensive materials related" to the case, determined that the home "should have been deemed marital property subject to equitable distribution," and concluded that Scott "suffered extensive financial losses . . . as a consequence" of Calpin's representation. After unsuccessfully arguing in a motion to dismiss that Friedman's affidavit should be rejected because he was not licensed to practice law in New Jersey, Calpin filed a motion for summary judgment.[1] Scott did not offer any material

---

[1] After Calpin filed this motion, the District Court ordered the parties to address the applicability of Puder v. Buechel, 874 A.2d 534, 540 (N.J. 2005) (holding that a client's declaration of satisfaction with the fairness of a settlement precludes a later legal malpractice action based on that settlement), and Gere v. Louis, 38 A.3d 591 (N.J. 2012) (distinguishing Puder on its facts). Ultimately, the District Court stated that it was "uncertain as to the continued validity of Puder in light of Gere[,]" but noted that summary judgment was appropriate regardless of Puder's applicability.

evidence in opposition to Calpin's summary judgment motion. The District Court granted that motion, holding that Scott "failed to establish the proper standard of care, or how [Calpin] deviated from it, through an expert report, as required." Scott appealed.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the entry of summary judgment. Doe v. Luzerne Cnty., 660 F.3d 169, 174 (3d Cir. 2011). In doing so, we draw all reasonable inferences from the record in favor of the non-moving party and will affirm if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2] Fed. R. Civ. P. 56(a); Kaucher v. Cnty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006). Summary judgment must be granted "if the evidence of negligence is too speculative to establish any material issue of fact." Zimmer Paper Prods., Inc. v. Berger & Montague, P.C., 758 F.2d 86, 94 (3d Cir. 1985).

The New Jersey Affidavit of Merit statute requires a plaintiff alleging malpractice by a licensed professional to "provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J. Stat. Ann. § 2A:53A-27. The Affidavit of Merit statute must be applied by federal courts sitting in diversity. Chamberlain v. Giampapa, 210 F.3d 154, 157 (3d Cir. 2000). The statute is not a pleading requirement, however, and "exists to provide expert verification of the merits of the

---

[2] We agree with the District Court's implicit determination that New Jersey law applies in this diversity action.

assertions in the complaint so that 'malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings.'" Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown P.C., 692 F.3d 283, 303 (3d Cir. 2012) (quoting Chamberlain, 210 F.3d at 160).

Scott does not challenge the District Court's conclusion that "[t]his is not a case where the malpractice alleged is so obvious as to obviate the need for an expert report." See Hubbard v. Reed, 774 A.2d 495, 499-500 (N.J. 2001) (holding that no affidavit of merit need be filed in "common knowledge" malpractice cases). Instead, Scott argues that the District Court erred in effectively holding that the Friedman affidavit of merit was insufficient to defeat Calpin's motion for summary judgment. In support of his argument, Scott emphasizes that the District Court, in denying Calpin's motion to dismiss, stated that Scott "has satisfied the Affidavit of Merit Statute." That statement was made, however, in response to Calpin's argument that Friedman was not a "licensed person," as that term is defined in the Affidavit of Merit Statute. See N.J. Stat. Ann. § 2A:53A–26(c) (providing that a "'licensed person' means any person who is licensed as . . . an attorney admitted to practice law in New Jersey"). Importantly, however, whether the Friedman affidavit of merit could be rejected for failing to satisfy the requirements of § 2A:53A–26(c) is separate from the issue whether the information in that affidavit was sufficient to defeat a motion for summary judgment.

After a thorough review of the record, we agree with the District Court's determination that there was no genuine issue of material fact concerning Scott's legal malpractice claim. In New Jersey, the elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty

4

by the defendant, and (3) proximate causation of the damages claimed by the plaintiff."

McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001) (citing Conklin v. Hannoch Weisman, 678 A.2d 1060, 1070 (N.J. 1996)). In Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 481 (3d Cir. 1979), we held that the plaintiff in a legal malpractice action bears the burden to establish the appropriate standard of care with expert evidence.[3] Once the defendant alleges that his conduct comported with the applicable standard of care, the plaintiff must present expert evidence demonstrating that the defendant's conduct failed to meet that standard. Gans v. Mundy, 762 F.2d 338, 343 (3d Cir. 1985); see also Waterloov Gutter Prot. Sys. Co, Inc., v. Absolute Gutter Prot., L.L.C., 64 F. Supp. 2d 398, 427 (D.N.J. 1999) (holding that no question of material fact was created where the "expert testimony provided by the [party claiming legal malpractice] does not establish what [the attorney's] duty of care was under the circumstances of this case.").

Here, Scott complained that Calpin's representation, as it pertained to allocating the equity in the home, "permitted the settlement of the divorce action for less than it should have been settled for without trial."[4] In response, Calpin averred that his conduct comported with

---

[3] Expert evidence is not required if "the lack of skill is so obvious as to be within the range of the ordinary experience and comprehension of non-professional persons." Lentino, 611 F.2d at 481; see also Farrell v. Janik, 542 A.2d 59, 63 (N.J. Super. Ct. Law Div. 1988) (noting that, under Lentino, expert testimony is not necessary if the "issue of responsibility is . . . a matter of common knowledge . . . within the ken of a layperson"). As noted above, there is no dispute here that an expert report was required.

[4] Scott attempted to raise several related claims, including an allegation that Calpin had a conflict of interest, in his opposition to the motion for summary judgment. The District Court refused to consider claims not raised in the complaint, and we conclude that this was not an abuse of discretion. See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).

the applicable standard of care. In particular, Calpin noted that, prior to the settlement, a state judge in the divorce proceedings determined that the house was not subject to equitable distribution because it had been purchased by Scott's wife prior to their marriage. Therefore, Scott was entitled to, at most, 15% of the proceeds from the sale of the house, which was intended to compensate him for various home improvements that he made. Calpin explained that, under these circumstances, it was impossible for [Scott] to receive 50% of the equity in the . . . residence." At the settlement hearing, Scott confirmed that he thought the agreement was fair, that Calpin had spoken with him "at significant length about [the] case," and that he was not placed under duress to accept the settlement.

The Friedman affidavit of merit was the only evidence submitted by Scott regarding the applicable standard of care. In that affidavit, Friedman stated that "Mr. Calpin failed to provide appropriate representation within the acceptable standard of care required of attorneys representing clients in divorce and equitable distribution proceedings . . . ." Significantly, however, Friedman failed to describe that standard of care or explain Calpin's relevant duty under it. Instead, Freidman merely opined that "I do not believe that counsel advised [Scott] of all the factors that would be looked at by the court in making a determination of equitable distribution . . . ." But Friedman provided no basis for this belief. Indeed, as the District Court noted, Friedman's assertions lack factual support in the record. See Pa. Dental Ass'n v. Medical Service Ass'n of Pennsylvania, 745 F.2d 248, 262 (3d Cir. 1984) (stating, in evaluating order granting summary judgment, "that the factual predicate of an expert's opinion must find some support in the record."); see also Major League Baseball Propr., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (stating that "[a]n expert's opinions that are

without factual basis and are based on speculation or conjecture are . . . inappropriate material for consideration on a motion for summary judgment."). Finally, although Friedman states that he reviewed "documents related to the case," he identifies only two, the "Seller's Residency Certification/Exemption [and the] Final Judgment of Divorce." Critically, however, he does not explain how those documents establish that Calpin breached the standard of care. See Zimmer, 758 F.2d at 94 (stating that "[w]e must view the evidence [plaintiff] has presented in light of the absence of a proffer of any standard of care in the legal profession.").

Because Scott failed to create a factual dispute as to the applicable standard of care, Gans, 762 F.2d at 343, the District Court properly granted Calpin's motion for summary judgment. Accordingly, we will summarily affirm the District Court's judgment.